**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4118-15T1

RBIAI OUAZENE,

    Appellant,

v.

BOARD OF REVIEW and
DELL MARKETING LP,

    Respondents.

_____

Submitted August 7, 2018 – Decided August 14, 2018

Before Judges Sabatino and Mawla.

On appeal from the Board of Review, Department
of Labor, Docket No. 075,367.

Rbiai Ouazene, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney
for respondent Board of Review (Melissa Dutton
Schaffer, Assistant Attorney General, of
counsel; Peter H. Jenkins, Deputy Attorney
General, on the brief).

Respondent Dell Marketing, LP, has not filed
a brief.

PER CURIAM

Rbiai Ouazene appeals from an April 29, 2016 final decision by the Board of Review, which found he was disqualified from receiving unemployment benefits, pursuant to N.J.S.A. 43:21-5(b), on the grounds of simple misconduct. We affirm.

We take the following facts from the record. Ouazene was employed by Dell Marketing LP as a systems information technology (IT) analyst from July 9, 2013 through October 9, 2015. Before commencing his employment with Dell, Ouazene signed an acknowledgement that he read and agreed to abide by the Dell code of conduct. During his employment, Ouazene completed twelve compliance trainings, which among other topics included: Dell's code of conduct, information security, trade compliance, and data protection and privacy.

During Ouazene's employment, Dell contracted with the New York Police Department (NYPD) narcotics division to install new computer systems, decommission old systems, and provide IT support. Ouazene was assigned by Dell to the NYPD, who employed him as a contractor. As a result, all Dell workers employed by the NYPD underwent background checks, and had orientation regarding NYPD policies. Specifically, due to the sensitive nature of the narcotics division work, and to protect the identity of the officers employed there, the NYPD maintained a policy that prohibited photography within the narcotics unit.

NYPD reported to Dell that Ouazene had taken a photograph of its undercover unit. Dell's security manager interviewed Ouazene who admitted he knew photographs were not permitted, and yet had taken one photo. During his interview with Dell security personnel, Ouazene claimed he saw a humorous sign in the unit and accidentally took a photo of it. Ouazene was specifically asked whether he had taken any other photos and denied doing so. However, eight additional photographs of the narcotics unit were discovered on his cellular telephone, some which identified undercover police officers from the unit. Specifically, one photograph was of a police officer appearing relaxed, and a second photo depicted a group of officers gathered at a table around a box of doughnuts with an unflattering caption displayed above the photo.

Dell terminated Ouazene for misconduct, specifically for violating its policy requiring employees to cooperate and be truthful during an internal investigation. Ouazene subsequently filed a claim for unemployment benefits. The deputy director found Ouazene eligible for benefits. Dell appealed, and a hearing occurred before the tribunal, which reversed the deputy's decision.

In the proceedings before the tribunal, Ouazene claimed he did not sign any document prohibiting him from photographing NYPD

A-4118-15T1

officers. Ouazene claimed the NYPD's own investigation of the incident had cleared him of wrongdoing. He also claimed his actions were not willful and deliberate. Ouazene claimed he had cooperated with Dell's investigation.

The tribunal rejected much of Ouazene's testimony, and found credible the testimony offered on behalf of Dell. The tribunal concluded even without a written no-photography policy, Ouazene had acknowledged in his testimony that all Dell staff were required to surrender their cellular telephones when entering the unit. The tribunal concluded

> [a] reasonable individual would understand that such an unusual procedure would only be taken if the taking of photographs or video was a threat to the workplace safety. The only reasons [Ouazene] was allowed to retain his cellular telephone was [to] diagnos[e] or [report] problems, via photographs of hardware and cables.

The tribunal also rejected Ouazene's claim he had been cleared by the NYPD. The tribunal found that, when Ouazene showed his cellular telephone to the detective who questioned him, the eight photos Dell subsequently discovered in the telephone's memory had been deleted and "were not visible" to the detective. Furthermore, the tribunal noted "simply because [Ouazene] was not indicted for a criminal action does not mean [he] did not violate company policy."

The tribunal rejected Ouazene's argument his actions were not willful or deliberate. The tribunal found "[Ouazene] failed to explain how photographs of police officers were related to information technology issues. [Moreover,] photographing police officers repeatedly was within [Ouazene's] control to prevent."

Contrary to Ouazene's claim he cooperated during Dell's investigation, the tribunal concluded he was

> not forthright . . . when he initially informed [Dell] that he had taken one or two photographs. Only after [Dell] examined the . . . telephone did they learn that [Ouazene] had taken additional photographs of policemen, who were identified as undercover police by the [NYPD.] Although [Ouazene] did not permanently erase the hard drive of the . . . telephone, his failure to inform the employer that he had taken other photographs is an attempt to minimize the extent of his transgression.

The tribunal concluded Ouazene's discharge was for simple misconduct connected with his work, and consequently disqualified him for benefits pursuant to N.J.S.A. 43:21-5(b). Ouazene appealed from the tribunal's decision, and the board affirmed. This appeal followed.

The scope of our review of an administrative agency's final determination is strictly limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). The agency's decision may not be disturbed unless shown to be arbitrary, capricious, or unreasonable or

inconsistent with the applicable law. <u>Ibid.</u> (citing <u>In re Warren</u>, 117 N.J. 295, 296 (1989)). Therefore, "[i]f the Board's factual findings are supported 'by sufficient credible evidence, courts are obliged to accept them.'" <u>Ibid.</u> (quoting <u>Self v. Bd. of Review</u>, 91 N.J. 453, 459 (1982)).

On appeal, Ouazene repeats the arguments he raised before the tribunal. N.J.A.C. 12:17-2.1 defines simple misconduct as:

> [A]n act which is neither "severe misconduct" nor "gross misconduct" and which is an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior that the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

In <u>Silver v. Bd. of Review</u>, 430 N.J. Super. 44, 48-49 (App. Div. 2013), we traced the history of statutory misconduct disqualification, and attempts by the Department of Labor and Workforce Development (the Department) to craft regulations in response to changes in the statute. At the time, the Legislature had added "severe misconduct" as an intermediate level of misconduct between simple and gross misconduct. However, because the Department had not yet adopted regulations defining the term we held "[u]ntil any new definition is promulgated by rule, the

A-4118-15T1

definition contained in the present version of N.J.A.C. 12:17-10.2(a) controls, except to the extent it is superseded by the 2010 amendment of the statute." Id. at 55.

Subsequently, we set aside the regulatory definition of simple misconduct because

> the regulations the Department adopted in 2015 fail to make this critical distinction between simple negligence, on the one hand, and intentional, deliberate, or malicious conduct, on the other hand, at least not consistently. Unfortunately, the literal wording of N.J.A.C. 12:17-2.1 defining and utilizing the term "simple misconduct" confusingly blends concepts of negligence with intentional wrongdoing that cannot be sensibly understood or harmonized.
>
> [In re N.J.A.C. 12:17-2.1, 450 N.J. Super. 152, 168 (App. Div. 2017).]

No new regulations since have been adopted. Therefore, for purposes of this appeal we reiterate, as we did in Silver, that simple misconduct requires "wil[l]fulness, deliberateness, intention, and malice." Silver, 430 N.J. Super. at 58.

We are satisfied there is sufficient evidence to support the board's decision to uphold the conclusions of the tribunal. The objective evidence of the training Ouazene received relating to Dell's security policy proves he had knowledge of the ban on photography within the NYPD narcotics unit. Moreover, Ouazene willfully, deliberately, and intentionally violated Dell's policy.

7

Indeed, the circumstances prove he had knowledge of the policy, namely, the requirement Dell employees abandon their cellular telephones before entering the unit, the limited purpose for which Ouazene could use his telephone, and his failure to explain how the photos he had taken of NYPD officers related to his employment tasks.

Additionally, credible evidence supported the tribunal's finding why the NYPD officer would have cleared Ouazene of wrongdoing, namely, the inability of the officer to recover the photos Ouazene had deleted, which Dell later discovered. These facts supported the conclusion Ouazene had deliberately violated the workplace rules, and demonstrated a disregard of the standards of behavior Dell had a right to expect from staff working in such an environment.

In sum, the evidence supported a finding Ouazene had committed simple misconduct as defined by N.J.A.C. 12:17-2.1, and the tribunal's findings were not arbitrary, capricious, or unreasonable. The board's final decision affirming the findings of the tribunal is supported by sufficient credible evidence in the record and comports with the applicable law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4118-15T1